# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

**KRISTINA STOCKTON**,

                  Plaintiff,

v.

**NEWTON COUNTY AMBULANCE DISTRICT**,

**DENNIS LEE LAKE**, in his official and individual capacities.

**BRYAN SMITH**, in his official and individual capacities.

**NEWTON COUNTY, MISSOURI,**

**TERESA WHITE**, in her official and individual capacities.

**STEVE LEE,** in his official and individual capacities.

**KELSE RENNER,** in her official and individual capacities.

**MICHAEL BARNETT,** in his official and individual capacities.

**CITY OF NEOSHO, MISSOURI**

**DUSTIN DOTY,** in his official and individual capacities.

**CODY BUNCH,** in his official and individual capacities.

**RODNEY HOWE,** in his official and individual capacities.

                  Defendants.

Case No.

## COMPLAINT WITH JURY DEMAND

COMES NOW, Plaintiff, Kristina Stockton, and for her causes of action against the

Defendants herein named, state as follows:

## JURISDICTION AND VENUE

181.    Plaintiff alleges violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution *via* 42 U.S.C. §1983 and Missouri common law claims for negligence all of which resulted in the wrongful death of her son, Forrest Stockton.

182.    The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.  The Court has pendent jurisdiction over all of Plaintiff's state law claims.

183.    Venue is proper with this Court pursuant to 28 U.S.C. §1391(b) as the acts alleged in this Complaint were committed within this Judicial District.

## PARTIES

184.    Plaintiff Kristina Stockton is a citizen and resident of the State of Missouri and is the mother of the deceased Forrest Stockton.

185.    Plaintiff is a proper party to file this action for the wrongful death of her son and is a Class One beneficiary, pursuant to §537.080(1) R.S.Mo.

186.    No other action is pending for the wrongful death of Forrest Stockton.

187.    Defendant Newton County Ambulance District (hereinafter "Defendant NCAD") is a Missouri ambulance district organized pursuant to Chapter 190 of the Revised Statutes of Missouri and operates wholly within Newton County, Missouri.

188.    Defendant Dennis Lee Lake (hereinafter "Defendant Lake") is an Emergency Medical Technician – Basic who is and was at all times material hereto an employee of Defendant NCAD. Defendant Lake's acts and/or omissions described herein were done in both his individual capacity and in his official capacity as an employee for Defendant NCAD.

189.    Defendant Bryan Smith (hereinafter "Defendant Smith") is a Paramedic who is and was at all times material hereto an employee of Defendant NCAD. Defendant Smith's

acts and/or omissions described herein were done in both his individual capacity and in his official capacity as an employee for Defendant NCAD.

190. Defendant Newton County, Missouri (hereinafter "Defendant Newton County") is a governmental body that owns and operates the Newton County Jail in Neosho, Newton County, Missouri under the direction of the Newton County Sheriff's Department, which is under the direct control and management of Defendant Newton County.

191. Defendant Teresa White (hereinafter "Defendant White") is and was at all times material hereto an employee of Defendant Newton County assigned to the Newton County Sheriff's Department specifically working at the Newton County Jail. Defendant White's acts and/or omissions described herein were done in both her individual capacity and in her official capacity as an employee for Defendant Newton County.

192. Defendant Steve Lee (hereinafter "Defendant Lee") is and was at all times material hereto an employee of Defendant Newton County assigned to the Newton County Sheriff's Department specifically working at the Newton County Jail. Defendant Lee's acts and/or omissions described herein were done in both his individual capacity and in his official capacity as an employee for Defendant Newton County.

193. Defendant Kelse Renner (hereinafter "Defendant Renner") is and was at all times material hereto an employee of Defendant Newton County assigned to the Newton County Sheriff's Department specifically working at the Newton County Jail. Defendant Renner's acts and/or omissions described herein were done in both her individual capacity and in her official capacity as an employee for Defendant Newton County.

194. Defendant Michael Barnett (hereinafter "Defendant Barnett") is and was at all times material hereto an employee of Defendant Newton County assigned to the Newton County Sheriff's Department as Corrections Lieutenant supervising the Newton County Jail.

Defendant Barnett's acts and/or omissions described herein were done in both his individual capacity and in his official capacity as Corrections Lieutenant for Defendant Newton County.

195.     Defendant City of Neosho, Missouri (hereinafter "Defendant Neosho") is a municipality wholly within Newton County, Missouri, that controls and operates the Neosho Police Department (hereinafter "Neosho PD").

196.     Defendant Dustin Doty (hereinafter "Defendant Doty") is and was at all times material hereto an employee of Defendant Neosho assigned as a commissioned officer of Neosho PD. Defendant Doty's acts and/or omissions described herein were done in both his individual capacity and in his official capacity as a police officer for Defendant Neosho.

197.     Defendant Cody Bunch (hereinafter "Defendant Bunch") is and was at all times material hereto an employee of Defendant Neosho assigned as a commissioned officer of Neosho PD. Defendant Bunch's acts and/or omissions described herein were done in both his individual capacity and in his official capacity as a police officer for Defendant Neosho.

198.     Defendant Rodney Howe (hereinafter "Defendant Howe") is and was at all times material hereto an employee of Defendant Neosho assigned as a commissioned officer and detective to the Neosho PD. Defendant Howe's acts and/or omissions described herein were done in both his individual capacity and in his official capacity as a police officer and detective for Defendant Neosho.

## FACTS COMMON TO ALL COUNTS

199.     Forrest Stockton was a citizen and resident of Noel, McDonald County, Missouri, who died on June 29, 2018.

200.     On June 29, 2018, at all times described in the following paragraphs, Mr. Stockton was intoxicated on methamphetamine and was exhibiting clear signs of acute

intoxication, Excited Delirium and/or severe delirium, any of which constitute a serious medical condition.

201.    Defendant Neosho has an ordinance under Section 215.670 which provides:

"A person who appears to be incapacitated or intoxicated may be taken by a Peace Officer to the person's residence, to any available treatment service, or to any other appropriate local facility, which may if necessary include a jail, for custody not to exceed twelve (12) hours."

202.    The ordinance fails to describe the manner in which the officer is to determine who should be taken home, who should be taken for treatment and who, if necessary, should be taken to jail for a 12-hour hold.

203.    The ordinance is not criminal in nature and does not provide a punishment if it is violated.

204.    On June 29, 2018, Defendants Bunch and Doty, commissioned officers with Neosho PD, were dispatched in reference to a disturbance. They arrived at the dispatch location at approximately 6:01 pm and made contact with Forrest Stockton in the yard of a residence.

205.    Defendants Bunch and Doty immediately noted that Mr. Stockton was lying in the side yard, rolling around, yelling incoherently. His breathing was labored.

206.    Defendant Bunch stated that he believed that Mr. Stockton was "under the influence" but was unsure of the substance. Defendant Bunch watched as Mr. Stockton stood up and leaned against a fence while swaying back and forth. Mr. Stockton kept jerking his body and moving sporadically. Mr. Stockton then fell on his back and again began rolling around. While rolling around, Mr. Stockton spit up what Defendant Bunch believed to be blood. Defendant Bunch called dispatch for an ambulance from Defendant NCAD.

207.     Defendants Bunch and Doty observed Mr. Stockton continue to roll around on the ground yelling incoherently. Defendant Doty asked Mr. Stockton his name, and Mr. Stockton replied, "Forrest." Mr. Stockton was intermittently able to communicate notwithstanding long periods of severe delirium.

208.     According to Defendants Bunch and Doty, Mr. Stockton continued yelling unintelligible words and grunting between statements. Defendant Doty asked Mr. Stockton his last name, and Mr. Stockton replied, "Stockton."

209.     Defendants Bunch and Doty noted that Mr. Stockton was wet and muddy with ridged muscle tone. He was sweating profusely.

210.     Mr. Stockton moved to the backyard and continued to alternately stand, fall, sit, lie down, yell and roll around. His breathing continued to be labored.

211.     Defendant Howe, a commissioned officer and detective with Neosho PD, arrived to assist Defendants Bunch and Doty.

212.     Defendant Howe observed Mr. Stockton rolling around on the ground. Defendant Howe stated that he believed Mr. Stockton was on some kind of narcotics based upon the way he was rolling around in the dirt and yelling. Defendant Howe further observed Mr. Stockton yelling unintelligibly and sweating profusely.

213.     At 6:22 p.m., Defendants Lake and Smith, licensed EMS providers with NCAD, arrived to assess Mr. Stockton.

214.     Defendant Howe continued to observe Mr. Stockton's erratic conduct and his interactions with Defendants Bunch, Doty, Lake and Smith.

215.     Defendants Bunch and Doty placed handcuffs on Mr. Stockton without incident for an assessment by Defendants Lake and Smith.

216.     Mr. Stockton cooperated while Defendants Lake and Smith stood apart from him and they looked in his nose and mouth for blood. They found none. Defendants Lake and Smith never physically touched Mr. Stockton during the entire time of their interaction. They did not take his pulse, blood pressure or any vital signs which would have alerted them to the serious medical condition caused by his methamphetamine intoxication.

217.     Defendant Doty noted that Defendant Smith stated, "Other than the drugs he's on, that's all that's wrong with him."

218.     Defendants Lake and Smith believed that Mr. Stockton's behavior was the result of drug intoxication. They failed to perform any actions to determine the extent of his intoxication even though Mr. Stockton's severe delirium was obvious to all Defendants who were present.

219.     Defendants Lake and Smith failed to perform any physical examination to determine objective medical indicators of Mr. Stockton's intoxication and severe delirium. They failed to transport Mr. Stockton to the hospital. They did not even ask Mr. Stockton if he wanted and/or needed to go to the hospital.

220.     Defendants Lake and Smith did not get consent for refusal of treatment from Mr. Stockton claiming he was violent even though body camera video shows he was not violent and was cooperative at the time of their contact.

221.     It is not objectively reasonable to believe that Defendants Lake and Smith cleared Mr. Stockton for incarceration in the Newton County Jail on a 12-hour hold.

222.     Defendants Bunch, Doty and Howe witnessed the interaction and were aware that Mr. Stockton did not refuse medical treatment.

223.     Defendants Bunch and Doty then placed Mr. Stockton in their patrol vehicle for transport to the Newton County Jail for a 12-hour hold even though they observed his

severe delirium for the preceding approximate half-hour and observed the lack of any physical examination of Mr. Stockton by Defendants Smith and Lake.

224.    Immediately upon being placed in the patrol vehicle, Mr. Stockton again began flailing around and yelling. During the entire drive to the jail, Mr. Stockton was yelling and flailing in the back of the patrol car to the point that Defendant Bunch contacted the Newton County Jail for assistance in removing Mr. Stockton from the vehicle and placement in a restraint chair.

225.    Upon arriving at the sally port at the Newton County Jail at 6:32 pm, Mr. Stockton was sideways in the seat.

226.    Upon removing Mr. Stockton from the patrol vehicle, Defendants Bunch and Doty observed Mr. Stockton continue to scream and jerk his body and observed that his breathing was more labored.

227.    Defendants White and Lee, guards with the Newton County Sheriff's Department at the Newton County Jail, were present when Mr. Stockton was removed from the patrol vehicle.

228.    Immediately upon seeing Mr. Stockton, Defendant White stated to Defendants Bunch and Doty and Defendant Lee that Mr. Stockton should be taken to the hospital. Defendants Bunch and Doty refused and one of them made a condescending and dismissive sound by blowing air through his lips causing them to flap, clearly demonstrating deliberate indifference to and contempt for Mr. Stockton's serious medical condition.

229.    Defendants Bunch, Doty, White and Lee placed Mr. Stockton in a restraint chair in which his ankles, legs, wrists, arms and chest were strapped to the chair. Defendants White and Lee subsequently added a head strap restraint.

230. Defendant Renner, a guard with the Newton County Sheriff's Department at the Newton County Jail, was in the "observation tower" in the jail where she observed the actions of and listened to the statements of Defendants Bunch, Doty, White and Lee while all of them were in the sally port.

231. After Mr. Stockton was placed in the restraint chair, Defendants White and Lee rolled the restraint chair to a "Detox" cell where he was placed in front of a camera for observation.

232. Newton County Sheriff's Department Standard Operating Guidelines – Jail Operations Section 11.01 (hereinafter "Jail Operations" or "Guidelines") contain a clear and unequivocal ministerial duty that a detainee must receive an examination by a physician for a determination that the detainee is fit for confinement before acceptance into the jail on a 12-hour hold. Defendants White, Lee and Renner failed to perform the ministerial duty to contact a physician before accepting Mr. Stockton into the jail in violation of Jail Operations Section 11.01.

233. Mr. Stockton did not receive an evaluation by a physician but was forced into a restraint chair in the sally port and moved to a "Detox" cell in the Newton County Jail.

234. For more than 50 minutes, Mr. Stockton's breathing was labored as he writhed, yelled and struggled in the restraint chair.

235. On two occasions during the approximately 50 minutes, Defendants White and Lee went into the "Detox" cell to place a helmet on Mr. Stockton's head due to his violent writhing and struggling. The first attempt resulted in the helmet flying from Mr. Stockton's head. Defendants White and Lee later reentered the "Detox" cell and used duct tape to strap the helmet on his head. Mr. Stockton was flailing so wildly that this attempt failed as well. Defendants White and Lee placed a head strap restraint on Mr. Stockton.

236. Defendant Renner was required to observe Mr. Stockton at least every 15 minutes while he was in the restraint chair.

237. Defendant Renner created a Restraint Chair Log in accord with Jail Operations, Section 11.28; however, Defendant Renner failed to observe Mr. Stockton every fifteen minutes, a ministerial duty clearly mandated by Jail Operations, Section 11.28.

238. At approximately 7:36 pm, Defendant Renner observed that Mr. Stockton did not appear to be breathing and did not respond to directions through the intercom.

239. Defendant Renner contacted Defendant Lee to notify him that Mr. Stockton was not responding to her, but Defendant Lee violated the clear ministerial duty mandated in Jail Operations Section 11.28 by telling Defendant Renner to try again to contact Mr. Stockton instead of checking on Mr. Stockton immediately as required by the Guidelines.

240. Defendant Renner again attempted to contact Mr. Stockton through the intercom and did not receive a response. Defendant Renner again notified Defendant Lee that Mr. Stockton's failed to respond.

241. After receiving a second call from Defendant Renner, Defendants White and Lee responded to the "Detox" cell and found Mr. Stockton unconscious.

242. Defendants White and Lee violated the clear ministerial duty mandated by Jail Operations Section 11.32 that required Defendants White and Lee to render appropriate medical attention. Defendants White and Lee rendered no medical attention.

243. When Mr. Stockton was discovered unconscious, Defendant Renner violated the clear and unequivocal duty contained in Jail Operations Section 11.33 by failing to create a separate log of the event to document who was contacted when, and the actions of the guards.

244. Upon information and belief, Defendant Renner contacted Defendant NCAD regarding Mr. Stockton's condition. Defendants Lake and Smith arrived at the Newton County Jail at approximately 7:45 pm.

245. Upon arrival, Defendants Lake and Smith rendered no assistance to Mr. Stockton and Defendant Smith noted that Mr. Stockton was cool to the touch and already had rigor mortis in his neck, jaw and arms even though Defendant Renner reported that he was alive and blinking his eyes fifteen minutes earlier at 7:30 pm.

246. Mr. Stockton was declared dead at 9:55 p.m. Mr. Stockton's Death Certificate lists his cause of death as, "Acute Methamphetamine Intoxication – Hours."

## COUNT I
## VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO MEDICAL TREATMENT – 42 U.S.C.§1983
## (Defendant Bunch)

247. Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

248. Defendant Bunch's acts and/or omissions described herein were done in his individual capacity and his official capacity. He acted under color of state law and in the course and scope of his employment with Defendant Neosho as a commissioned officer with Neosho PD.

249. Forrest Stockton was experiencing a serious medical condition for which he needed immediate medical treatment on June 29, 2018.

250. Defendant Bunch witnessed the extended periods of severe delirium that were indicative of Forrest Stockton's serious medical condition on June 29, 2018.

251. Defendant Bunch subjectively believed that Mr. Stockton needed medical attention due to a serious medical condition when he called for EMS from Defendant NACD.

252.     Mr. Stockton's extended periods of severe delirium, labored breathing and sweating were objectively indicative of a serious medical condition.

253.     Because Defendant Bunch personally witnessed Mr. Stockton's extended periods of severe delirium, it was unreasonable for him to fail to obtain immediate medical treatment for Mr. Stockton and to believe that the statement of Defendant Smith that, "[o]ther than the drugs he's on, that's all that's wrong with him..." didn't require immediate medical treatment since he subjectively believed it was drug intoxication that was creating Mr. Stockton's serious medical condition.

254.     Defendant Bunch witnessed the failure of Defendants Lake and Smith to perform any examination to determine objective medical indicators of Mr. Stockton's intoxication and severe delirium.

255.     Defendant Bunch further witnessed Mr. Stockton's extended periods of severe delirium in the patrol vehicle on the transport to the Newton County Jail.

256.     Defendant Bunch had to help forcibly remove Mr. Stockton from the patrol vehicle in the sally port and help forcibly place him in the restraint chair.

257.     Defendant Bunch also heard and disregarded the statement of Defendant White when she stated that Mr. Stockton should be taken to the hospital. Defendant Bunch demonstrated deliberate indifference to Mr. Stockton's serious medical condition when he made or acquiesced in Defendant Doty making a condescending and dismissive sound by blowing air through his lips causing them to flap for the purpose of demonstrating contempt for Mr. Stockton's serious medical condition.

258.     Defendant Bunch was deliberatively indifferent to the known serious medical condition of Mr. Stockton and consequently violated his clearly established Fourteenth Amendment right to medical care by failing to take him for medical treatment for a serious

medical condition and instead taking him to the Newton County Jail on a 12-hour hold where he was physically restrained until he died.

259.     Further, Defendant Bunch was malicious, reckless and deliberately indifferent to Mr. Stockton's obvious serious medical condition.

260.     As a direct result of Defendant Bunch's conduct, Mr. Stockton suffered agonizing physical pain, extreme mental anguish and ultimately death.

261.     Plaintiff is entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully request this Court to enter Judgment against Defendant Bunch for actual and compensatory damages in a sum which is fair and reasonable, for attorney fees pursuant to 42 U.S.C. § 1988, together with costs herein expended, for punitive damages against Defendant Bunch in such a sum as will punish Defendant Bunch, and deter him from like conduct in the future, and for such other and further relief as the Court deems just and proper.

## COUNT II
## VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO MEDICAL TREATMENT – 42 U.S.C.§1983
## (Defendant Doty)

262.     Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

263.     Defendant Doty's acts and/or omissions described herein were done in his individual capacity and his official capacity. He acted under color of state law and in the course and scope of his employment with Defendant Neosho as a commissioned officer with Neosho PD.

264.     Forrest Stockton was experiencing a serious medical condition for which he needed immediate medical treatment on June 29, 2018.

13

265.    Defendant Doty witnessed the extended periods of severe delirium that were indicative of Forrest Stockton's serious medical condition on June 29, 2018.

266.    Defendant Doty subjectively believed that Mr. Stockton required medical attention due to a serious medical condition because he concurred with the call for EMS from Defendant NACD.

267.    Mr. Stockton's extended periods of severe delirium, labored breathing and sweating were objectively indicative of a serious medical condition.

268.    Because Defendant Doty personally witnessed Mr. Stockton's extended periods of severe delirium, it was unreasonable for him to fail to obtain immediate medical treatment for Mr. Stockton and to believe that the statement of Defendant Smith that, "[o]ther than the drugs he's on, that's all that's wrong with him..." didn't require immediate medical treatment since he subjectively believed it was drug intoxication that was creating Mr. Stockton's serious medical condition.

269.    Defendant Doty witnessed the failure of Defendants Lake and Smith to perform any physical examination to determine objective medical indicators of Mr. Stockton's intoxication and severe delirium.

270.    Defendant Doty witnessed Mr. Stockton's periods of severe delirium in the patrol vehicle prior to and after the transport to the Newton County Jail. Defendant Doty heard the police radio call from Defendant Bunch to the Newton County Jail for assistance with the removal of Mr. Stockton from the patrol vehicle and for a restraint chair.

271.    Defendant Doty had to help forcibly remove Mr. Stockton from the patrol vehicle in the sally port and help forcibly place him in the restraint chair.

272.    Defendant Doty also heard and disregarded the statement of Defendant White when she stated that Mr. Stockton should be taken to the hospital. Defendant Doty

demonstrated deliberate indifference to Mr. Stockton's serious medical condition when he made or acquiesced in Defendant Bunch making a condescending and dismissive sound by blowing air through his lips causing them to flap for the purpose of demonstrating contempt for Mr. Stockton's serious medical condition.

273.    Defendant Doty was deliberatively indifferent to the known serious medical condition of Mr. Stockton and consequently violated his clearly established Fourteenth Amendment right to medical care by failing to take him for medical treatment for a serious medical condition and instead taking him to the Newton County Jail on a 12-hour hold where he was physically restrained until he died.

274.    Further, Defendant Doty was malicious, reckless and deliberately indifferent to Mr. Stockton's obvious serious medical condition.

275.    As a direct result of Defendant Doty's conduct, Mr. Stockton suffered agonizing pain, extreme mental anguish and ultimately death.

276.    Plaintiff in entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully request this Court to enter Judgment against Defendant Doty for actual and compensatory damages in a sum which is fair and reasonable, for attorney fees pursuant to 42 U.S.C. § 1988, together with costs herein expended, for punitive damages against Defendant Doty in such a sum as will punish Defendant Doty, and deter him from like conduct in the future, and for such other and further relief as the Court deems just and proper.

## COUNT III
## VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO MEDICAL
## TREATMENT – 42 U.S.C.§1983
## (Defendant Howe)

277.     Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

278.     Defendant Howe's acts and/or omissions described herein were done in his individual capacity and his official capacity. He acted under color of state law and in the course and scope of his employment with Defendant Neosho as a commissioned officer and Detective with Neosho PD.

279.     Forrest Stockton was experiencing a serious medical condition for which he needed immediate medical treatment on June 29, 2018.

280.     While on site at the 500 Block of Maple, Neosho, Missouri, Defendant Howe witnessed the extended periods of severe delirium that were indicative of Forrest Stockton's serious medical condition on June 29, 2018.

281.     Defendant Howe stated at the time that he believed Mr. Stockton was on some kind of narcotics based upon the way he was rolling around in the dirt and screaming. Defendant Howe further observed that Mr. Stockton was not speaking intelligible words while he was yelling and that he was sweating profusely. Defendant Howe's statements indicate a subjective belief that Mr. Stockton had a serious medical condition and that he needed immediate medical attention.

282.     Mr. Stockton's extended periods of severe delirium, labored breathing and sweating were objectively indicative of a serious medical condition.

283.     Because Defendant Howe witnessed Mr. Stockton's extended periods of severe delirium, it was unreasonable for him to fail to obtain immediate medical treatment for Mr. Stockton and to believe that the statement of Defendant Smith that, "[o]ther than the

drugs he's on, that's all that's wrong with him..." didn't require immediate medical treatment since he subjectively believed it was drug intoxication that was creating Mr. Stockton's serious medical condition.

284.     Defendant Howe witnessed the failure of Defendants Lake and Smith to perform any physical examination to determine objective medical indicators of Mr. Stockton's intoxication and severe delirium.

285.     Defendant Howe was deliberatively indifferent to the serious medical condition of Mr. Stockton and consequently violated his clearly established Fourteenth Amendment right to medical treatment for a serious medical condition by allowing Defendants Bunch and Doty to take him into custody on a 12-hour hold and not ordering Mr. Stockton to be taken to the hospital.

286.     Further, Defendant Howe was malicious, reckless and deliberately indifferent to Mr. Stockton's obvious serious medical condition.

287.     As a direct result of Defendant Howe's conduct, Mr. Stockton suffered agonizing physical pain, extreme mental anguish and ultimately death.

288.     Plaintiff is entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiff respectfully request this Court to enter Judgment against Defendant Howe for actual and compensatory damages in a sum which is fair and reasonable, for attorney fees pursuant to 42 U.S.C. § 1988, together with costs herein expended, for punitive damages against Defendant Howe in such a sum as will punish Defendant Howe, and deter him from like conduct in the future, and for such other and further relief as the Court deems just and proper.

**VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO MEDICAL
TREATMENT FOR FAILURE TO TRAIN OR SUPERVISE – 42 U.S.C.§1983
(Defendant Neosho)**

289.     Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

290.     Defendant Neosho, including its governing body, supervisors, employees, police/peace officers and/or agents of Neosho, at the relevant times of the occurrences described herein, knew, or should have known, that there existed among supervisors, employees, police/peace officers and/or agents, a widespread and persistent pattern of failing to provide and/or denying medical care and treatment to arrestees and detainees who appeared to be incapacitated or intoxicated by transporting them to the Newton County jail for 12-hour holds instead of transporting them for medical treatment.

291.     Further, Defendant Neosho, including its governing body, employees, supervisors, police and peace officers and/or agents of Neosho, at the relevant times of the occurrences described herein, knew, or should have known, that such failures were causing such arrestees and detainees, including Mr. Stockton, to suffer deprivations of their clearly established right to medical care for serious medical conditions under the due process protection of the Fourteenth Amendment to the United States Constitution *via* 42 U.S.C. § 1983.

292.     Defendant Neosho's actions and inactions show a deliberate indifference to or tacit approval of the constitutional misconduct of its employees and a deliberate indifference to the rights of such arrestees and detainees, such as Mr. Stockton, to medical care for serious medical conditions under the due process protection of the Fourteenth Amendment to the United States Constitution *via* 42 U.S.C. § 1983.

293. Because the pattern of failing to provide and/or denying medical care for serious medical conditions to such arrestees and detainees continues unchecked, this policy and practice was the moving force behind the deprivation of Mr. Stockton's right to due process under the Fourteenth Amendment to the United States Constitution *via* 42 U.S.C. § 1983.

294. The continued practice of failing to provide and/or denying medical care for serious medical conditions to arrestees and detainees who appear incapacitated or intoxicated is so pervasive that it constitutes a custom or usage amongst all police and peace officers employed by Defendant Neosho. The continued practice of denying medical care for serious medical conditions to such arrestees and detainees did and was likely foreseeable to result in a deprivation of Mr. Stockton's constitutional rights and his life.

295. As a direct result of Defendant Neosho's pattern and practice of denying medical care for serious medical conditions to such arrestees and detainees, which was performed under color of state law, Forrest Stockton suffered grievous bodily harm, pain, suffering, fear and ultimately death, in violation of his right under the Fourteenth Amendment to the Constitution of the United States of America *via* 42 U.S.C. § 1983.

296. Further, Defendant Neosho failed to adequately train its law enforcement officers, with the knowledge that this failure would result in the deprivation of constitutional rights of such arrestees and detainees.

297. The acts of Defendant Neosho as set forth above exhibited malice, recklessness and deliberate indifference to the federally protected rights of Mr. Stockton.

298. Plaintiff is entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully request this Court to enter Judgment against Defendant Neosho for actual and compensatory damages in a sum which is fair and reasonable, for attorney fees pursuant to 42 U.S.C. § 1988, together with costs herein expended, for punitive damages against Defendant Neosho in such a sum as will punish Defendant Neosho, and deter it from like conduct in the future, and for such other and further relief as the Court deems just and proper.

## COUNT V
## VIOLATION OF EIGHTH AMENDMENT PROHIBITION AGAISNT CRUEL AND UNUSUAL PUNISHMENT AND FOURTEENTH AMENDMENT RIGHT TO MEDICAL TREATMENT FOR FAILURE TO TRAIN OR SUPERVISE – 42 U.S.C.§1983
### (Defendant Neosho)

299.    Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

300.    Defendant Neosho, through its governing body, enacted an ordinance within its Municipal Code under Section 215.670 which states as follows:

> "A person who appears to be incapacitated or intoxicated may be taken by a Peace Officer to the person's residence, to any available treatment service, or to any other appropriate local facility, which may if necessary include a jail, for custody not to exceed twelve (12) hours."

301.    The ordinance fails to describe the manner in which the officer is to determine who should be taken home, who should be taken for treatment and who, if necessary, should be taken to jail for a 12-hour hold.

302.    The ordinance mirrors §67.315 R.S.Mo.  Missouri courts determined that §67.35 R.S.Mo. was enacted to protect intoxicated persons.

303.    The ordinance is unconstitutionally vague on its face and in its application to Forrest Stockton and authorizes several options for handling an incapacitated or intoxicated person without providing direction to determine which alternative to use to provide for the

protection of the incapacitated or intoxicated person, thus inviting arbitrary, reckless and deliberately indifferent decisions by officers as to how to address and where to take incapacitated or intoxicated detainees.

304.    Defendant Neosho had a duty under the Eighth Amendment and Fourteenth Amendment to the United States Constitution *via* 42 U.S.C. §1983 to establish and/or enact clear and unambiguous ordinances and/or to include training, supervision, policies, procedures, customs and practices for officers and to ensure those policies, procedures, and customs were followed to ensure individuals detained and taken into custody for 12-hour holds who hadn't violated any law nor who were under any clearly defined standard of incapacitation or intoxication, such as Mr. Stockton, were free from cruel and unusual punishment and received medical care for serious medical conditions, but they failed and refused to do so.

305.    The ordinance itself and Defendant's practices pursuant to the ordinance fail to provide for and/or deny medical care for serious medical conditions to persons who are detained and taken into custody for a 12-hour hold. These actions were likely and reasonably foreseeable to cause, and did in fact cause, such a deprivation of Mr. Stockton's constitutional rights resulting in his death.

306.    Further, Defendant Neosho at the relevant times of the occurrences described herein, knew, or should have known, that such failures were causing its arrestees and detainees, including Mr. Stockton, to be free of cruel and unusual punishment and to suffer deprivations of their rights to medical care for serious medical conditions under the Eighth Amendment to the United States Constitution and due process under the Fourteenth Amendment to the United States Constitution *via* 42 U.S.C. §1983.

307.    The right of persons to be free from cruel and unusual punishment and to receive medical care for serious medical conditions were clearly established prior to June 29, 2018 and was known to Defendant Neosho.

308.    As a direct result of Defendant Neosho placing Forrest Stockton in the Newton County Jail and denying medical care for serious medical conditions as herein described, all of which was performed under color of state law, Forrest Stockton suffered grievous bodily harm, pain, suffering, fear and ultimately death, in violation of his rights under the Eighth Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution *via* 42 U.S.C. § 1983.

309.    Further, Defendant Neosho failed to adequately train its law enforcement officers, with the knowledge that this failure would result in deprivation of the constitutional rights of such arrestees and detainees that are set forth above.

310.    The acts of Defendant Neosho as set forth above exhibited malice, recklessness and deliberate indifference to the federally protected rights of Mr. Stockton.

311.    Plaintiff seeks an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully request this Court to enter Judgment against Defendant Neosho for actual and compensatory damages in a sum which is fair and reasonable, for attorney fees pursuant to 42 U.S.C. § 1988, together with costs herein expended, for punitive damages against Defendant Neosho in such a sum as will punish Defendant Neosho, and deter it from like conduct in the future, and for such other and further relief as the Court deems just and proper.

## COUNT VI
## NEGLIGENCE
### (Defendants Bunch, Doty, Howe and Defendant Neosho)

312.     Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

313.     Upon information and belief, Defendant Neosho maintains a policy of insurance in which Defendants Bunch, Doty, Howe and Neosho are named insureds and that covers claims for bodily injury against public officials and employees for an occurrence caused by the negligent acts alleged in this Complaint.

314.     The acts and/or omissions of Defendants Bunch, Doty and Howe were done in their individual capacities and official capacities and in the course and scope of their employment with Defendant Neosho under color of state law when they responded to a disturbance call involving Forrest Stockton on June 29, 2018.

315.     Defendants Bunch, Doty and Howe held themselves out as possessing the degree of skill and learning necessary to provide law enforcement and emergency responder services.

316.     Defendants Bunch, Doty and Howe had a duty to act in a manner consistent with the applicable standard of care for law enforcement officers.

317.     Defendants Bunch, Doty and Howe were negligent and careless in failing to use the degree of skill and learning ordinarily used under the same or similar circumstances by members of their profession in at least the following respects:

a.     Failing to identify and/or disregarding a serious medical condition that required immediate medical care;

b.     Failing to obtain medical treatment for Forrest Stockton when he exhibited objectively reasonable signs of a serious medical condition.

23

c.      Taking physical custody of Forrest Stockton for the purposes of transporting him to the Newton County Jail for a 12-hour hold in lieu of taking him for medical treatment.

d.      Requesting restraint of Forrest Stockton in a restraint chair at the Newton County Jail.

318.    The negligence and carelessness of Defendants Bunch, Doty and Howe caused or contributed to cause damage to Mr. Stockton.

319.    As a direct and proximate result of one or more of Defendants' negligent acts and/or omissions, Mr. Stockton suffered agonizing physical pain, severe mental anguish and ultimately death.

WHEREFORE, Plaintiff respectfully request this Court to enter Judgment against Defendants Bunch, Doty, Howe and Neosho for actual and compensatory damages in a sum which is fair and reasonable, costs herein expended, and further relief as the Court deems just and proper.

### COUNT VII
### NEGLIGENCE
### (Defendant Smith and Defendant NCAD)

320.    Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

321.    Defendant Smith's acts and/or omissions described herein were done in his individual capacity and his official capacity. He acted under color of state law and in the course and scope of his employment as a paramedic with Defendant NCAD.

322.    Defendant NCAD maintains a policy of insurance in which the Defendants are named insureds that covers claims against public officials or employees for an occurrence caused by the negligent acts alleged in this Complaint.

323. On June 29, 2018, Defendant Smith was dispatched to provide paramedical services to Forrest Stockton. Defendant Smith held himself out as a paramedic possessing the degree of skill and learning necessary to provide emergency medical services such as was needed by Mr. Stockton on June 29, 2018.

324. Defendant Smith had a duty to act in a manner consistent with the applicable standards and standard of care for paramedics.

325. Defendant Smith was negligent and careless in failing to use the degree of skill and learning ordinarily used under the same or similar circumstances by members of his profession in at least the following respects:

a. Wholly failing to perform his duties by refusing to evaluate Forrest Stockton;

b. Failing to obtain a full set of vital signs, blood glucose and history from Forrest Stockton;

c. Failing to transport Forrest Stockton to a hospital;

d. Exceeding the scope of his authority by offering definitive medical diagnostic conclusions that exceeded his diagnostic capabilities;

e. Failing to perform the minimum clinical standards of care when evaluating an undifferentiated patient;

f. Failing to ask Forrest Stockton if he needed medical treatment;

g. Failing to obtain Forrest Stockton's consent to refuse medical treatment.

326. The negligence and carelessness of Defendant Smith caused or contributed to cause damage to Mr. Stockton.

327. As a direct and proximate result of one or more of Defendant Smith's failures, Mr. Stockton suffered agonizing physical pain, severe mental anguish and ultimately death.

WHEREFORE, Plaintiff respectfully request this Court to enter Judgment against Defendant Smith for actual and compensatory damages in a sum which is fair and reasonable, costs herein expended, and further relief as the Court deems just and proper.

**COUNT VIII**
**NEGLIGENCE**
**(Defendant Lake and Defendant NCAD)**

328.    Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

329.    Defendant Lake's acts and/or omissions described herein were done in his individual capacity and his official capacity. He acted under color of state law and in the course and scope of his employment with Defendant NCAD.

330.    Defendant NCAD maintains a policy of insurance in which the Defendants are named insureds that covers claims against public officials or employees for an occurrence caused by the negligent acts alleged in this Complaint.

331.    On June 29, 2018, Defendant Lake was dispatched to provide emergency medical technical services for Forrest Stockton. Defendant Lake held himself out as an EMT possessing the degree of skill and learning necessary to provide emergency medical services such as was needed by Mr. Stockton.

332.    Defendant Lake had a duty to act in a manner consistent with the applicable standards and standard of care for EMTs.

333.    Defendant Lake was negligent and careless in failing to use the degree of skill and learning ordinarily used under the same or similar circumstances by members of his profession in at least the following respects:

a.      Wholly failing to perform his duties by refusing to evaluate Forrest Stockton;

b.      Failing to obtain a full set of vital signs, blood glucose and history from Forrest Stockton;

c.      Failing to transport Forrest Stockton to a hospital;

d.      Exceeding the scope of his practice by offering definitive medical diagnostic conclusions that exceeded his diagnostic capabilities;

e.      Failing to perform the minimum clinical standards of care when evaluating an undifferentiated patient;

f.      Failing to ask Forrest Stockton if he needed medical treatment;

g.      Failing to obtain Forrest Stockton's consent to refuse medical treatment.

334.    The negligence and carelessness of Defendant Lake caused or contributed to cause damage to Mr. Stockton.

335.    As a direct and proximate result of one or more of Defendant Smith's failures, Mr. Stockton suffered agonizing physical pain, severe mental anguish and ultimately death.

WHEREFORE, Plaintiff respectfully request this Court to enter Judgment against Defendant Lake for actual and compensatory damages in a sum which is fair and reasonable, costs herein expended, and further relief as the Court deems just and proper.

## COUNT IX
## VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO MEDICAL TREATMENT INCLUDING FAILURE TO TRAIN OR SUPERVISE
## 42 U.S.C.§1983
## (Defendants Smith, Lake and NCAD)

156.    Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

157.    Defendant Smith's acts and/or omissions described herein were done in his individual capacity and his official capacity. He acted under color of state law and in the course and scope of his employment with NCAD.

158. Defendant Lake's acts and/or omissions described herein were done in his individual capacity and his official capacity. He acted under color of state law and in the course and scope of his employment with NCAD.

159. The actions and inactions of Defendants Smith and Lake in wholly failing to perform their duties amounted to the refusal of medical treatment to Forrest Stockton for his serious medical condition.

160. The actions of Defendants Smith and Lake were deliberately indifferent to the clearly established right of Mr. Stockton to receive medical treatment by disregarding the extended periods of severe delirium and physical manifestations of a serious medical condition and also by failing to perform their assigned duties in at least the following respects:

    a.    Wholly failing to perform their duties by refusing to evaluate Forrest Stockton;

    b.    Failing to obtain a full set of vital signs, blood glucose and history from Forrest Stockton;

    c.    Failing to transport Forrest Stockton to a hospital;

    d.    Exceeding the scope of their practice by offering definitive medical diagnostic conclusions that exceeded their diagnostic capabilities;

    e.    Failing to perform the minimum clinical standards of care when evaluating an undifferentiated patient;

    f.    Failing to ask Forrest Stockton if he needed medical treatment;

    g.    Failing to obtain Forrest Stockton's consent to refuse medical treatment.

161. Based upon their observations of Mr. Stockton's severe delirium, his labored breathing and sweating, Defendants Smith and Lake were aware of or should have been aware of Mr. Stockton's serious medical condition.

162. Mr. Stockton's state of severe delirium, his labored breathing and sweating were objectively indicative of a serious medical condition.

163. Defendant NCAD, including its supervisors, employees, paramedics, EMTs and/or agents of NCAD, at the relevant times of the occurrences described herein, knew, or should have known, that there existed among supervisors, employees, paramedics, EMTs and/or agents, a widespread and persistent pattern of failing to allow and/or preventing medical treatment to arrestees and detainees of Neosho PD who were in the custody of Neosho PD for consideration of a 12-hour hold.

164. Defendant NCAD's failure to train and supervise its staff amounted to deliberate indifference to the rights of persons with whom the paramedics and EMTs came into contact, specifically arrestees and detainees, including Plaintiff and those similarly situated.

165. Defendant NCAD's actions and inactions relating to training and supervision of its supervisors, employees, paramedics, EMTs and/or agents constitute a deliberate choice to follow a course of action by policymakers, rendering it liable for injury and damage resulting therefrom.

166. Defendant NCAD's failure to train and supervise its paramedics and EMTs reflects a deliberate or conscious choice by NCAD creating a policy, procedure or practice making it liable for such a failure under 42 U.S.C. § 1983.

167. Defendant NCAD failed to adequately train and supervise its paramedics and EMTs with the knowledge that this failure would result in deprivation of clearly established constitutional rights of arrestees and detainees.

168. The constitutional right to medical care for a serious medical condition was clearly established on June 29, 2018.

169. As a direct and proximate result of the widespread and pervasive failures by Defendant NCAD and its deliberate indifference toward his rights, Mr. Stockton suffered significant harm.

170. As a direct result of Defendant NCAD's pattern and practice of failing to train and supervise its paramedics and EMTs, which was performed under color of state law, Mr. Stockton suffered agonizing physical pain, extreme emotional distress and ultimately death in violation of his rights under the Fourteenth Amendment to the United States Constitution *via* 42 U.S.C. § 1983.

171. The act of Defendants NCAD, Smith and Lake as set forth above caused or contributed to cause damage to Mr. Stockton.

172. As a direct and proximate result of one or more of the failures of Defendants Smith, Lake and NCAD, Mr. Stockton suffered agonizing physical pain, severe mental anguish and ultimately death.

173. The acts of Defendants NCAD, Smith and Lake as set forth above were malicious, reckless and deliberately indifferent to Mr. Stockton's federally protected rights.

174. Plaintiff is entitled to an award of attorney fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully request this Court to enter Judgment against Defendants Smith, Lake and NCAD for actual and compensatory damages in a sum which is fair and reasonable, for attorney fees pursuant to 42 U.S.C. § 1988, together with costs herein expended, for punitive damages against Defendants Smith, Lake and NCAD in such a sum as will punish them, and deter them from like conduct in the future, and for such other and further relief as the Court deems just and proper.

## COUNT X
## NEGLIGENCE
## (Defendant White and Defendant Newton County)

175. Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

176. Upon information and belief, Defendant Newton County maintains a policy of insurance in which the Defendants are named insureds that covers claims against public officials or employees for an occurrence caused by the negligent acts alleged in this Complaint and further that Defendant White breached clear and unequivocal ministerial duties that caused harm to Forrest Stockton.

177. Defendant White's acts and/or omissions described herein were done both in her individual capacity and her official capacity acting in the course and scope of her employment with the Newton County Sheriff's Department at the Newton County Jail.

178. Defendant White first observed Forrest Stockton when he was removed from a Neosho PD patrol vehicle by Defendants Bunch and Doty. She immediately stated her opinion that Mr. Stockton should be taken to the hospital based upon his severe delirium and extreme behaviors that were objectively reasonable evidence of a serious medical condition.

179. Defendant White did not pursue any action when Defendants Bunch and Doty were condescending and dismissive of her opinion.

180. Defendant White was negligent by failing to follow the clearly defined mandate of the Jail Operations guidelines as described in detail herein.

181. Defendant White was negligent by failing to follow Jail Operations Section 11.01 which mandates that before acceptance into the jail on a 12-hour hold, a detainee must receive an examination by a physician for a determination that the detainee is fit for

confinement. The mandate of Jail Operations Section 11.01 is clear, ministerial and requires no exercise of discretion.

182. The very existence of the policy indicates recognition of the clear danger to detainees who are brought to the jail by law enforcement for a 12-hour hold for appearing to be incapacitated or intoxicated.

183. Defendant White did not seek a determination by a physician, and she did not inquire of any other employee about whether a determination by a physician was obtained.

184. In fact, Defendant White knew a determination by a physician was not obtained because she assisted in placing Mr. Stockton into the restraint chair and assisted in rolling the chair into the "Detox" cell.

185. Defendant White was negligent and careless by failing to require a fitness determination by a physician's because an examination by a physician would have addressed the severe medical condition that she observed upon Mr. Stockton's arrival.

186. As a direct and proximate cause of Defendant White's failure to require a fitness determination by a physician, Mr. Stockton suffered agonizing physical pain and severe mental anguish for more than an hour and ultimately death.

187. During the approximately fifty (50) minutes that Mr. Stockton was strapped to the restraint chair, Defendant White could hear him yelling and observed him writhing in the chair and forcing his body forward and backward in the chair.

188. On two occasions, Defendants White and Lee went into the "Detox" cell to place a helmet on Mr. Stockton's head for protection. After the first attempt resulted in the helmet flying from Mr. Stockton's head, Defendants White and Lee used duct tape to strap the helmet on his head. Mr. Stockton was flailing so wildly that this attempt failed as well.

Defendants White and Lee placed a head strap restraint on Mr. Stockton. Defendant White did not call for medical assistance after witnessing this severe delirium.

189.    Defendant White was further negligent in violating the clear mandate of Jail Operations Section 11.33 by failing to render appropriate medical attention to Mr. Stockton when he was found unconscious in the restraint chair. Jail Operations Section 11.33 required her to render medical attention. She did nothing. The mandate of Jail Operations Section 11.01 is clear, ministerial and requires no exercise of discretion.

190.    Defendant White was negligent and careless by failing to render medical attention as required.

191.    Defendant White's failure to render medical attention caused or contributed to cause Mr. Stockton's death.

192.    As described herein, Defendant White had a duty to follow the clear ministerial duties set forth in the Newton County Sheriff's Department Standard Operating Guidelines – Jail Operations.

193.    Defendant White breached her duty by failing to follow the aforementioned Guidelines.

194.    As a direct and proximate cause of Defendant White's negligence, carelessness and failure to perform these ministerial duties, Mr. Stockton was damaged.

195.    As a direct and proximate result of Defendant White's negligence, carelessness and failure to perform these ministerial duties, Mr. Stockton suffered agonizing physical pain and severe mental anguish and ultimately died.

WHEREFORE, Plaintiff respectfully requests this Court to enter Judgment against Defendant Smith and Defendant Newton County for actual and compensatory damages in a

sum which is fair and reasonable, costs herein expended, and further relief as the Court deems just and proper.

## COUNT XI
## NEGLIGENCE
### (Defendant Lee and Defendant Newton County)

196.    Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

197.    Upon information and belief, Defendant Newton County maintains a policy of insurance in which the Defendants are named insureds that covers claims against public officials or employees for an occurrence caused by the negligent acts alleged in this Complaint and further that Defendant Lee breached clear and unequivocal ministerial duties that caused harm to Forrest Stockton.

198.    Defendant Lee's acts and/or omissions described herein were done both in his individual capacity and his official capacity acting in the course and scope of his employment with the Newton County Sheriff's Department at the Newton County Jail.

199.    Defendant Lee first observed Forrest Stockton when he was removed from the patrol vehicle by Defendants Bunch and Doty. He heard Defendant White state that Mr. Stockton should be taken to the hospital based upon his severe delirium and extreme behaviors that were objectively reasonable evidence of a serious medical condition. He ignored the statement of Defendant White and did not pursue medical care for Mr. Stockton.

200.    Defendant Lee was negligent by failing to follow the clearly defined mandate of the Jail Operations guidelines as described in detail herein.

201.    Defendant Lee was negligent by failing to follow Jail Operations Section 11.01 which mandates that before acceptance into the jail on a 12-hour hold, a detainee must receive an examination by a physician for a determination that the detainee is deemed fit for

confinement. The mandate of Jail Operations Section 11.01 is clear, ministerial and requires no exercise of discretion.

202. The very existence of the policy indicates recognition of the clear danger to detainees who are brought to the jail for a 12-hour hold by law enforcement for appearing to be incapacitated or intoxicated.

203. Defendant Lee did not seek a determination by a physician, and he did not inquire of any other employee about whether a determination by a physician was obtained.

204. In fact, Defendant Lee knew a determination by a physician was not obtained because he assisted in placing Mr. Stockton into the restraint chair and assisted in rolling the chair into the "Detox" cell.

205. Defendant Lee was negligent and careless by failing to require a fitness determination by a physician's because an examination by a physician would have addressed the severe medical condition that he observed upon Mr. Stockton's arrival.

206. As a direct and proximate cause of Defendant Lee's failure to require a fitness determination by a physician, Mr. Stockton suffered agonizing physical pain, severe mental anguish and ultimately death.

207. During the approximately fifty (50) minutes that Mr. Stockton was strapped to the restraint chair, Defendant Lee could hear him yelling and observed him writhing in the chair and forcing his body forward and backward in the chair.

208. On two occasions, Defendants White and Lee went into the "Detox" cell to place a helmet on Mr. Stockton's head for protection. After the first attempt resulted in the helmet flying from Mr. Stockton's head, Defendants White and Lee used duct tape to strap the helmet on his head. Mr. Stockton was flailing so wildly that this attempt failed as well.

Defendant Lee placed a head strap restraint on Mr. Stockton. Defendant Lee did not call for medical assistance after witnessing this severe delirium.

209.    Defendant Lee was further negligent by failing to follow the clearly defined mandate of Jail Operations Section 11.28 that required him to immediately proceed to the restraint chair when called by the person in the tower designated to observe the restrained detainee. When Defendant Renner called Defendant Lee at 7:36 pm to advise that Mr. Stockton was not responsive, Defendant Renner refused to check on Mr. Stockton telling Defendant Renner to try to contact Mr. Stockton again. The mandate of Jail Operations Section 11.28 is clear, ministerial and requires no exercise of discretion.

210.    Defendant Lee's failure to proceed immediately to Mr. Stockton's aid was a direct a proximate cause for Mr. Stockton not receiving prompt medical treatment.

211.    Defendant Lee's failure to promptly respond to provide medical assistance caused or contributed to cause Mr. Stockton's death.

212.    Defendant Lee was further negligent in violating the clear mandate of Jail Operations Section 11.33 by failing to render appropriate medical attention to Mr. Stockton when he was found unconscious in the restraint chair. Jail Operations Section 11.33 required him to render medical attention. He did nothing. The mandate of Jail Operations Section 11.33 is clear, ministerial and requires no exercise of discretion.

213.    Defendant Lee was negligent and careless by failing to render medical attention as required.

214.    Defendant Lee's failure to render medical attention caused or contributed to cause Mr. Stockton's death.

215.    As described herein, Defendant Lee had a duty to follow the clear ministerial duties described in the Newton County Sheriff's Department Standard Operating Guidelines.

216.     Defendant Lee breached his duty by failing to follow the aforementioned Guidelines.

217.     As a direct and proximate cause of Defendant Lee's negligence, carelessness and failure to perform these ministerial duties, Mr. Stockton was damaged.

218.     As a direct and proximate result of Defendant Lee's negligence, carelessness and failure to perform these ministerial duties, Mr. Stockton suffered agonizing physical pain and severe mental anguish and ultimately died.

WHEREFORE, Plaintiff respectfully requests this Court to enter Judgment against Defendant Lee and Defendant Newton County for actual and compensatory damages in a sum which is fair and reasonable, costs herein expended, and further relief as the Court deems just and proper.

## COUNT XII
## NEGLIGENCE
### (Defendant Renner and Defendant Newton County)

219.     Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

220.     Upon information and belief, Defendant Newton County maintains a policy of insurance in which the Defendants are named insureds that covers claims against public officials or employees for an occurrence caused by the negligent acts alleged in this Complaint and further that Defendant Renner breached clear and unequivocal ministerial duties that caused harm to Forrest Stockton.

221.     Defendant Renner's acts and/or omissions described herein were done both in her individual capacity and her official capacity acting in the course and scope of her employment with the Newton County Sheriff's Department at the Newton County Jail.

222.     Defendant Renner first observed Forrest Stockton on a video camera when he was removed from the patrol vehicle by Defendants Bunch and Doty. The camera system has audio so she heard Defendant White state that Mr. Stockton should be taken to the hospital based upon his severe delirium and extreme behaviors that were evidence of a serious medical condition.

223.     Defendant Renner was negligent by failing to follow the clearly defined mandate of the Jail Operations guidelines as described in detail herein.

224.     Defendant Lee was negligent by failing to follow Jail Operations Section 11.01 which mandates that before acceptance into the jail on a 12-hour hold, a detainee must receive an examination by a physician for a determination that the detainee is fit for confinement. The mandate of Jail Operations Section 11.01 is clear, ministerial and requires no exercise of discretion.

225.     The very existence of the policy indicates recognition of the clear danger to detainees who are brought to the jail for a 12-hour hold by law enforcement for appearing to be incapacitated or intoxicated.

226.     Defendant Renner did not seek a determination by a physician, and she did not inquire of any other employee about whether a determination by a physician was obtained.

227.     In fact, Defendant Renner knew a determination by a physician was not obtained because she observed Defendants White and Lee placing Mr. Stockton into the restraint chair and rolling the chair into the "Detox" cell.

228.     Defendant Renner was negligent and careless by failing to require a fitness determination by a physician's because an examination by a physician would have addressed the severe medical condition that she observed upon Mr. Stockton's arrival.

229. As a direct and proximate cause of Defendant Renner's failure to require a fitness determination by a physician, Mr. Stockton suffered agonizing physical pain and severe mental anguish and ultimately death.

230. Defendant Renner created a Restraint Chair Log in accord with Jail Operations Section 11.28; however, Defendant Renner failed to observe Mr. Stockton every fifteen minutes as clearly required by the same section.

231. During the approximately fifty (50) minutes that Mr. Stockton was strapped to the restraint chair, Defendant Renner was in the observation tower where she could hear him yelling and observe him writhing in the chair and forcing his body forward and backward in the chair so violently his protective helmet flew off. Defendant Renner observed Defendants White and Lee place a head strap restraint on Mr. Stockton. Defendant Renner did not call for medical assistance after witnessing this severe delirium.

232. Defendant Renner was further negligent and careless in failing to observe Mr. Stockton in the restraint chair every 15 minutes as required by Jail Operations, Section 11.28. The mandate of Jail Operations Section 11.28 is clear, ministerial and requires no exercise of discretion.

233. Defendant Renner's failure to observe Mr. Stockton every fifteen (15) minutes as required by the Guidelines caused or contributed to cause Mr. Stockton's death.

234. As described herein, Defendant Renner had a duty to follow the clear ministerial duties described in the Newton County Sheriff's Department Standard Operating Guidelines.

235. Defendant Renner breached her duty by failing to follow the aforementioned Guidelines.

236.     As a direct and proximate cause of Defendant Renner's negligence, carelessness and failure to perform these ministerial duties, Mr. Stockton was damaged.

237.      As a direct and proximate result of Defendant Renner's negligence, carelessness and failure to perform these ministerial duties, Mr. Stockton suffered agonizing physical pain and severe mental anguish and ultimately died.

WHEREFORE, Plaintiff respectfully requests this Court to enter Judgment against Defendants Renner and Newton County for actual and compensatory damages in a sum which is fair and reasonable, costs herein expended, and further relief as the Court deems just and proper.

**COUNT XIII**
**VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO MEDICAL TREATMENT**
**42 U.S.C.§1983**
**(Defendants White, Lee and Renner)**

238.     Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

239.     Defendant White's acts and/or omissions described herein were done in her individual capacity and her official capacity. She acted under color of state law and in the course and scope of her employment with Defendant Newton County.

240.     Defendant Lee's acts and/or omissions described herein were done in his individual capacity and his official capacity. He acted under color of state law and in the course and scope of his employment with Defendant Newton County.

241.     Defendant Renner's acts and/or omissions described herein were done in her individual capacity and her official capacity. She acted under color of state law and in the course and scope of her employment with Defendant Newton County.

242. The actions of Defendants White, Lee and Renner were deliberately indifferent to the clearly established right of Mr. Stockton to receive medical treatment for a serious medical condition. Defendants White, Lee and Renner showed deliberate indifference to Mr. Stockton's extensive periods of delirium and physical manifestations of medical need and also by failing to perform their clearly defined ministerial duties heretofore listed.

243. The right to receive medical treatment for a serious medical condition was clearly established on or before June 29, 2018.

244. Defendant White told Defendants Lee, Bunch and Doty that Mr. Stockton should be taken to the hospital when he arrived at the jail. Defendants White, Lee and Renner were aware of Mr. Stockton's serious medical condition based upon their own observations of his condition after he arrived at the jail.

245. Mr. Stockton's constant state of severe delirium while at the Newton County Jail was objectively indicative of a serious medical condition.

246. Defendants White, Lee and Renner were deliberatively indifferent to the known serious medical condition of Mr. Stockton and consequently violated his clearly established right to medical care for a serious medical condition under the Fourteenth Amendment to the United States Constitution *via* 42 U.S.C. §1983 by failing to obtain medical treatment, accepting him into the Newton County Jail on a 12-hour hold without a physician's approval, placing him in a restraint chair, failing to adequately monitor his condition and failing to perform resuscitative medical treatment upon finding him unconscious.

247. Further, Defendants White, Lee and Renner were malicious, reckless and deliberately indifferent to Mr. Stockton's obvious serious medical condition.

248.     As a direct result of the conduct of Defendants White, Lee and Renner, Forrest Stockton suffered agonizing physical pain, extreme mental anguish and ultimately death.

249.     Plaintiff is entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully request this Court to enter Judgment against Defendants White, Lee and Renner for actual and compensatory damages in a sum which is fair and reasonable, for attorney fees pursuant to 42 U.S.C. § 1988, together with costs herein expended, for punitive damages against Defendants White, Lee and Renner in such a sum as will punish them, and deter them from like conduct in the future, and for such other and further relief as the Court deems just and proper.

**COUNT XIV**
**VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO MEDICAL**
**TREATMENT**
**42 U.S.C.§1983**
**(Defendants Barnett and Newton County)**

250.     Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

251.     Defendant Barnett's acts and/or omissions were done both in his individual and official capacities acting in the course and scope of his employment with Defendant Newton County acting under color of state law.

252.     Defendant Barnett is the "Corrections Lieutenant" with the Newton County Sheriff's Department designated to oversee operations of the Newton County Jail and responsible for the training and supervision of its employees.

253.     Defendants Newton County and Barnett, at the relevant times of the occurrences described herein, knew, or should have known, that there existed among

employees at the Newton County Jail, a widespread and persistent pattern of failing to allow and/or preventing medical treatment to arrestees and detainees and a failure to follow the written policies for the operation of the jail contained in the Newton County Sheriff's Department Standard Operating Guidelines – Jail Operations.

254. The failure of Defendants Newton County and Barnett to train and supervise its staff amounted to deliberate indifference to the rights of persons with whom the staff came into contact, specifically arrestees and detainees, including Plaintiff and those similarly situated.

255. The actions and inactions of Defendant Newton County relating to training and supervision of its staff at the Newton County Jail constitute a deliberate choice to follow a course of action by policymakers, rendering it liable for injury and damage resulting therefrom.

256. Defendant Newton County's failure to train and supervise its jail staff reflects a deliberate or conscious choice by Defendant Newton County creating a policy, procedure or practice making it liable for such a failure under 42 U.S.C. § 1983.

257. Defendants Newton County and Barnett failed to adequately train and supervise jail staff with the knowledge that this failure would result in deprivation of constitutional rights of arrestee and detainees.

258. As a direct and proximate result of the widespread and pervasive failures by Defendant Newton County and Defendant Barnett and their deliberate indifference towards his rights, Mr. Stockton suffered significant harm.

259. As a direct result of the pattern and practice of Defendant Newton County and Defendant Barnett in failing to train and supervise its jail staff, which was performed under color of state law, Mr. Stockton suffered agonizing physical pain, extreme emotional

distress and ultimately death in violation of his right under the Fourteenth Amendment to the United States Constitution *via* 42 U.S.C. § 1983.

260.    The acts of Defendants Newton County and Barnett as set forth above were malicious, reckless and deliberately indifferent to Mr. Stockton's federally protected rights entitling him to an award of punitive damages against them in order to deter them and others similarly situated from like conduct in the future.

261.    Plaintiff seeks an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully request this Court to enter Judgment against Defendants Newton County and Barnett for actual and compensatory damages in a sum which is fair and reasonable, for attorney fees pursuant to 42 U.S.C. § 1988, together with costs herein expended, for punitive damages against Defendants Newton County and Barnett in such a sum as will punish them, and deter them from like conduct in the future, and for such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable by law.

Dated:     March 27, 2020                    Respectfully submitted,


*s/Christopher S. Gahagan*
_____
Christopher S. Gahagan, MBN 36729
McGonagle Spencer Gahagan, P.C.
4505 Madison Ave., Suite 230
Kansas City, Missouri 64111
Telephone:    (816) 221-2222
Facsimile:     (816) 221-2245
Email:  chris@mcgonaglespencer.com


*s/John Anthony Picerno*
John Anthony Picerno, MBN 41861
1301 Oak Street, Suite 605
Kansas City, Missouri 64106
Telephone:     (816) 471-3330
Mobile:        (816) 694-7726
Facsimile      (816) 396-5680
Email: JPLaw@JohnPicerno.com
*Attorney for Plaintiff*